***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with modification of the caption to show that ESIS is the proper named servicing agent in this matter and modifications to Finding of Fact #24, Conclusion of Law #2 and Award #2.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. ESIS was the carrier on the risk at the time of the October 22, 1998 injury.
3. On October 22, 1998, plaintiff's average weekly wage was $345.66 and her weekly compensation rate was $230.44.
4. On October 22, 1998, plaintiff was employed by defendant-employer as a production worker.
5. The following Exhibits were introduced at or following the hearing before the Deputy Commissioner by agreement of the parties:
a. Exhibit 1: Pre-trial Agreement.
b. Exhibit 2: Pre-trial Exhibits.
c. Exhibit 3: Employment Security Commission records.
d. Exhibit 4: Gilbert employment records.
 ***********
Based upon the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was 39 years old at the time of the hearing before the Deputy Commissioner and has an Associates Degree in Criminal Justice from Fayetteville Technical Community College.
2. Plaintiff had previously worked for defendant-employer through a temporary agency from 1991 until 1993. Thereafter, plaintiff was hired by defendant-employer as a production technician on March 10, 1997.
3. Plaintiff sustained an injury to her right shoulder in 1993 while lifting boxes at work and was diagnosed with bursitis and tendonitis of the shoulder. As a result, she completed a substantial course of medical treatment and her physicians restricted her to no overhead lifting. The 1993 injury resulted in a workers' compensation claim that was settled between the parties.
4. On October 22, 1998, plaintiff was training a coworker, when plaintiff tripped on a pallet while carrying a box of materials weighing between 20 and 25 pounds. The box plaintiff was carrying dislodged from her grasp but she caught the box before it fell to the floor.
5. As a result, plaintiff immediately experienced a pull in her left shoulder accompanied by pain.
6. Lisa Johnson (hereinafter "Johnson"), a coworker, witnessed plaintiff's incident. Plaintiff told Johnson at the time that she had injured her shoulder and was experiencing pain. Defendants took plaintiff's recorded statement during which plaintiff identified Johnson as a witness. However, Johnson was not requested to complete a "Witness Report of Another Associates Injury" by defendants until August 9, 2000.
7. Plaintiff testified that she reported her injury to Monica Herring (hereinafter "Herring") who is her immediate supervisor. Furthermore, plaintiff testified that she reported the accident approximately one month later to Darryl Lawson (hereinafter "Lawson") who represents the next level of management because Herring had not acted on plaintiff's report of the injury. Neither Herring nor Lawson testified before the Deputy Commissioner.
8. Plaintiff has an extensive medical history for numerous conditions including joint pain prior to her injury on October 22, 1998. Based upon the medical evidence of record, plaintiff suffers from a somatization disorder with anxiety and depression.
9. Plaintiff was first treated following her injury on October 27, 1998 at Southern Regional AHEC where she reported multiple joint pains but did not specifically report a work related injury. The first complaint of left shoulder pain was not reported in plaintiff's medical records at Southern Regional until March 19, 1999 when plaintiff reported pain for several months. The physician's note on March 19, 1999, however, fails to associate plaintiff's complaints of left shoulder pain to an injury at work.
10. Between October 28, 1998 and March 19, 1999, plaintiff had four additional appointments at Southern Regional during which she did not report an injury at work or complain of left shoulder pain specifically.
11. On March 19, 1999, plaintiff was referred to Dr. Stanley Gilbert of Cape Fear Orthopaedic Clinic since he had previously examined plaintiff for bilateral shoulder problems.
12. After missing two appointments scheduled during March 1999, plaintiff was seen by Dr. Gilbert on April 5, 1999 at which time plaintiff complained of multiple joint pains but particularly in the left shoulder. However, plaintiff did not attribute her left shoulder pain to any work related injury. Dr. Gilbert diagnosed plaintiff with impingement syndrome and ordered an MRI.
13. The MRI revealed that plaintiff had a full thickness tear of the left rotator cuff.
14. On April 19, 1999, plaintiff returned to Dr. Gilbert and completed a Cape Fear patient intake form that had inadvertently not been completed at her first appointment. On that form, plaintiff specifically noted that she had injured her left shoulder while carrying a box of materials at defendant-employer. Initially, plaintiff recorded the date of injury as February 1998. However, plaintiff immediately edited and changed the date to October 1998. Furthermore, although plaintiff noted an injury on the patient intake form, she did not directly inform Dr. Gilbert of that information.
15. Defendants contend that plaintiff did not attribute the rotator cuff tear to her October 1998 work related incident until she learned of her condition. However, the only opportunity for plaintiff to discover that she had a rotator cuff tear would have been at the time the MRI was performed. Dr. Gilbert indicated that radiologists may or may not discuss findings of tests with patients depending on the practices of the particular radiologist. No evidence suggests that plaintiff had access to the radiologist's written report in her case as it was faxed to Dr. Gilbert's office.
16. Defendants have failed to prove by the greater weight of the evidence that plaintiff associated the rotator cuff tear to the October 1998 work incident only when she learned of the MRI results. The greater weight of the evidence fails to show that plaintiff was aware that she had a rotator cuff tear prior to returning to Cape Fear following the MRI. The timing of the completion of Dr. Gilbert's patient intake form was within the control of Cape Fear and not plaintiff. The timing of plaintiff's report to Cape Fear does not cause her report to lack credibility.
17. Dr. Gilbert surgically repaired plaintiff's rotator cuff on May 13, 1999. Thereafter, plaintiff reached maximum medical improvement and was released to return to work on August 31, 1999. Dr. Gilbert assigned a 20% permanent partial disability to plaintiff's left shoulder.
18. Plaintiff's physical restrictions are (a) no overhead lifting; (b) no lifting greater than 15 pounds with the unassisted left arm and (3) no lifting greater than 30 to 35 pounds with both arms, especially any lifting from waist height to shoulder height.
19. In the opinion of Dr. Gilbert, plaintiff's October 22, 1998 incident could have caused plaintiff's rotator cuff tear and her injuries are consistent with the type of incident she suffered.
20. Plaintiff reported new and renewed ailments during the course of and following the treatment of her left shoulder. The evidence is replete with medical evaluations by Dr. Gilbert and Southern Regional. Most of the objective tests performed for plaintiff's multiple ailments were negative. However, plaintiff did require a trigger finger release surgery in November 1999, which was performed by Dr. Gilbert. The multitude of plaintiff's complaints continued through at least July 20, 2000. It is unquestioned that most of these complaints are for conditions unrelated to the instant workers' compensation claim.
21. The only medical treatment subsequent to August 31, 1999, related to plaintiff's October 22, 1998, injury was on July 14, 2000 at which time plaintiff reported to Dr. Gilbert that she had fallen at work on June 6, 2000 re-injuring her left shoulder. Dr. Gilbert diagnosed tendonitis and released plaintiff to return to work on July 20, 2000 even though plaintiff continued to complain of multiple diffuse joint pains. According to Dr. Gilbert, plaintiff did not require further treatment for osteoporosis.
22. Plaintiff returned to work for defendant-employer on September 15, 1999. Thereafter, plaintiff was either out of work or on light duty on numerous occasions for conditions unrelated to her left shoulder injury.
23. Defendant-employer discharged plaintiff for excessive work absences on September 18, 2000. Defendant-employer has a "no fault" leave policy whereby an employee is permitted a certain number of non-qualifying absences prior to disciplinary action or discharge. An employee may take personal leave, if accumulated and available, to negate absences being counted toward the total number of absences permitted before disciplinary action is taken. Plaintiff's absences related to the potential workers' compensation claim were not counted in determining the number of non-qualifying absences; however, plaintiff's absences related to her work related injury did require her to expend personal leave time because defendant-employer had not accepted her claim as compensable. Plaintiff would have had sufficient personal leave to prevent her termination had she not expended accumulated personal leave for the work related injury.
24. Plaintiff has actively sought employment since her termination but has been unable to secure new employment within her physical restrictions. Plaintiff would benefit from vocational rehabilitation.
25. Plaintiff has proven by the greater weight of the evidence that she sustained an injury by accident on October 22, 1998 in the course and scope of and arising out of her employment with defendant-employer. Plaintiff's account of the injury is supported by the credible testimony of her coworker who witnessed the accident. Furthermore, the greater weight of the evidence demonstrates that plaintiff timely reported her injury to her immediate supervisor. However, assuming that plaintiff did fail to report her injury properly, there is no evidence that defendants have been prejudiced thereby.
26. Plaintiff has proven by the greater weight of the evidence that her rotator cuff tear that required medical treatment, including the surgery performed by Dr. Gilbert, was a result of her injury by accident on October 22, 1998.
27. Plaintiff has proven by the greater weight of the evidence that she has been unable to earn the same or greater wages following her discharge from employment and that her inability to obtain employment is related to her substantial physical restrictions resulting from her work related injury.
28. Defendant has defended this action upon reasonable grounds. Specifically, plaintiff has a history of multiple joint pains that are not related to any work related activity or injury making it difficult to determine causation. Furthermore, there is some evidence that plaintiff did not follow proper company procedure in reporting her claim.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the scope of her employment with defendant-employer on October 22, 1998, when she sustained a rotator cuff tear. N.C. Gen. Stat. § 97-2(6).
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses for her left rotator cuff tear as a result of her injury by accident on October 22, 1999, to the extent that such medical treatment tends to effect a cure, give relief or lessen her disability. Furthermore, plaintiff is entitled to vocational rehabilitation assistance which is necessary to lessen her period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
3. Subject to a reasonable attorney's fee, plaintiff is entitled to temporary total disability compensation at the rate of $230.44 for all periods she was out of work since May 13, 1999 through September 15, 2000, and total disability benefits subsequent to September 15, 2000 and continuing until further order of the Commission. N.C. Gen. Stat. §97-29; Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996).
4. Plaintiff is not entitled to an award of attorney fees as defendant defended this action on reasonable grounds. N.C. Gen. Stat. § 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff, subject to a reasonable attorney's fee approved herein, total disability compensation since May 13, 1999 and continuing until further order of the Industrial Commission in the amount of $230.44 per week for all periods plaintiff was out of work that are a result of her compensable injury by accident on October 22, 1998. Defendants shall pay in one lump sum all accrued amounts due plaintiff, subject to the attorney fee approved herein.
2. Subject to the limitations of N.C. Gen. Stat. § 97-25.1, defendants shall pay all reasonably necessary medical and vocational expenses related to plaintiff's compensable injury by accident for so long as such expenses are for treatment and vocational services that tend to effect a cure, give relief or lessen plaintiff's disability.
3. A reasonable attorney's fee in the amount of 25% of is hereby approved. This fee shall be paid by deducting 25% from the accrued lump sum due plaintiff to be paid directly to plaintiff's counsel and thereafter by payment of every fourth check due plaintiff directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the ___ day of December 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER